Next case for argument is United States v. Wood, docket 23-5027. Council, we're ready for your argument. Thank you, Your Honor. Council, may it please the court. My name is Shira Keevel. I'm an assistant federal public defender and I represent Craig Wood. It's my plan today, unless the court has other questions, to focus on federal rule of evidence 90211 and the district court's error here in allowing the government to rely on a late disclosed and incomplete certificate to authenticate crucial evidence of the Indian status element over Mr. Wood's objection. Federal rule evidence 90211 is a fairly recent innovation that provides a limited exception to the traditional rule, which is that a party wishing to introduce business records for their truth must call live witnesses subject to cross-examination to not only authenticate the records, but also to provide all required foundational evidence for their admission for their truth. In order to utilize this limited exception, a party has to comply with two strict requirements that are contained within the text of the rule itself. The first, the written notice requirement, requires pretrial disclosure not only of the records themselves, but also of the certificate of authentication to allow the opponent fair opportunity to challenge both the records and the certificate. Is the rule really that clear about that? Because it sets off the second requirement in dashes, and then the consideration is no prejudice to the defendant. In other words, I agree with you the intent to offer, or the intent to use the exhibit, the certificate, has to come before trial, but I'm not sure about the middle condition there, just as a matter of grammar. In your honor, I think as a matter of grammar, it's clear both from the current version of the rule, and from the version before the 2011 stylistic change, that it definitely does. So it says before trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record, M-dash, and must make the record and certificate available for inspection, M-dash, so that the party has a fair opportunity to challenge that. And so there, because of M-dashes on both sides, I think it's clearly part of the notice requirement. If it is, why do you even have a notice requirement? Because the record and the certificate would have to be provided before the trial, and therefore that qualifies the notice, wouldn't it? I think there are ways to give a notice. So you can give, say, your expert notice, and say my expert is going to get up and testify, but you wouldn't give their report. That's what the rule used to be. At the time of this trial, too. Now you have to make this pre-trial notice, and that includes providing the signed report from your expert. Here, the same is true. Before trial, you have to give reasonable written notice, and you must make these available. Regardless, no notice... You had the underlying, you either had the correct, your honor. Right. Did you have the document? My understanding is yes. The purported tribal document was disclosed and discovered. So it's the certification setting the foundation is what you did not get or get notice of until after jury selection. Correct, your honor. And your honor, I think that that's important, right, because this... We talked about authentication, but when you look at the second requirement of Rule 902.11, because this is about business records, business record authentication has always been different, and it's different here, because the authentication here needs to not only authenticate, yes, this is what it purports to be, but that it provides all necessary foundational evidence for the admission of that record. There are... You had some evidence of blood before trial, didn't you? So your honor, again, we have this certificate of Indian blood. I'd ask the court to really take a close look at it. It's in the Supplemental Record Volume 1 at page 53. What are you talking about, the underlying document? Yes, the underlying document, which is complicated because it's called a certificate, but yes, the underlying record, if you take a look at it, almost everything on it is typewritten. It's typewritten that it's July 23rd, 2021. Typewritten enrollment status, enrolled. Typewritten a blood quantum. But this doesn't get the government to the end, because this date, July 2021, is after the offense conduct, and they need to prove that he's an enrolled member or that he's recognized as an Indian by a tribe or the federal government in February 2021. So then what you have is you have this handwritten notation, enrollment date, colon, April 29th, 1995. So we have something that, at least by appearance, was added after the fact. I don't know why you can say that. There's no place for it to be typed on that form, is there? No, exactly. So there is a place to say enrollment status. And so it's an open question when that was added. That's correct, your honor. And the witness was I think that that is where I would step back for a second, because, yes, is it humanly possible that that person could have been subpoenaed? Yes. But the problem is, is that the defense attorney had no reason to. Even seeing this weirdness, even acknowledging, hey, I don't know if this is really business record. I have no idea how the government's going to get it into evidence. The defense attorney, by the time he gets to trial, and as trial is approaching, the government no longer can provide a certificate of authentication. They made no notice and made no disclosure. So the defense attorney rightly relies on that. As federal rule of evidence 90211 says it may, the defense attorney says, I'll wait until this witness gets to court. I will cross-examine then. That is my traditional route to undermining the government's attempt to provide authentication and to undermine their attempt to provide foundation. But then they show up at court and the witness is never going to come. And the witness was listed of three possibilities on the 18th of December or so, right? My understanding is that the witness, Sunday night before the Monday trial, the government filed a new witness list saying tribal authentication witness. I don't remember exactly how specific it was. So they identified the witness? The witnesses were identified in the middle of a wide year. The potential witnesses were identified in the middle of a wide year. So there is, the defense doesn't have to mitigate the government's case. The government must abide by the rules of evidence and call the witnesses that it needs to and introduce the documents that it needs to to prove its case. And the defense attorney is allowed to rely on the idea that he gets to respond to that. The record does not indicate whether the witness, was it McCoy? Correct. Whether the witness was present? That's correct. On the morning of the trial. There's no evidence that that was so. That's correct. So that any subpoena, when first find out about him on the day of trial, the name, you can't get a subpoena out by then, can you? No, Your Honor. I mean, this is a real big problem. And the record doesn't indicate whether the witness, McCoy, was present so that they could be interviewed at least. That's right, Your Honor. We don't have any of those facts. So we have a situation where, you know, yes, hypothetically before trial, they could have looked at this underlying document and said, the defense could have tried to subpoena a witness, but it had no reason to. So then when you show up at trial, you finally have a reason to because you've just been told that no witness is coming, then yes, there's no opportunity. There's no evidence on the record that the person came to court as opposed to emailing this or sending it by courier. And again, this is right before Christmas. There's just no reason to assume that that is something that happened here, especially given the government's scramble during void year to even identify who the witness was going to be. The witness signed it that day, though. It does say that the witness signed it in December 2021. The judge was willing to entertain both sides' arguments as far as not only the witness, but the certificate. And the defense counsel had an opportunity to speak and tell the judge why not, and never said anything about it might have been emailed or something like that. Well, there wouldn't be a problem with it being emailed. So there would be no reason to raise an objection to that. Well, I'm talking about the subpoena ability. Oh, in terms of the subpoena ability. So what the defense attorney did say is, we have no way to know if this witness, if this individual, McCoy, even looked at this underlying document in the last seven months. Who cares? Why would that matter whether the witness looked at it in the last seven months, so long as she... Well, I guess you'd have to know what she was certifying. And that strongly suggests when she signs her name to the certificate that she did, doesn't it? I don't think that that suggests that. You would hope. But I think what's more telling here is what the government's response is. The government doesn't say, what are you talking about? Leslie McCoy is in the back room and I just showed her both documents. I don't know if it's a him or her. I just showed McCoy both documents and that's what happened. No, the government's only defense that it says to the district court is, well, it's the same person who's signing both. And the district court says, oh yeah, it's the same person that's signing both. What's the problem? But when we're looking at the question that Judge Murphy was asking about is, what was the defense's options at this time? That is yet almost an affirmative indication on the record that in fact Leslie McCoy is not present. Well, here's an option. The defense has heard the court's ruling and therefore knows that this is coming into evidence. And if it comes into evidence and it stands, then the only remedy is on appeal. And so the district court might say, let's get this lady subpoenaed. And then if they ring the office and they say she's in Tahiti, go tell the district judge, we can't find this lady. At which point the district court might well reconsider. We never require a defense of any party to mitigate harm in that way. Well, we're talking prejudice. Prejudice is part of this rule. I disagree that prejudice is part of the rule. I think that it is possible to say that, you know, if this court wants to reach that, we can, and I'd love to have a discussion about prejudice. I don't believe that below, I think the objection is sufficient. This is a rule, not a suggestion. This contains no exceptions in the text, no exceptions in this court's case law, and no reason to create exception. Rule 90211 is the exception. So what would have worked here? I'm believing I'm not handing out a blue ribbon to the government, because this didn't have to be this way. But if the government would have handed these documents before the voir dire, then would you say, goodbye us? No, your honor. You mean that Monday morning? Yes. No, I think, you know, maybe we would have a technical quibble on whether it was before trial or after trial had already begun. But it has to be So then what does that mean? I think that, you know, the traditional route is for the government to call a live witness subject to cross-examination. And so sufficiently before trial to allow a defense attorney to challenge both the underlying document and the certificate means it has to be early enough to get that live witness into court. And Sunday morning, Sunday at noon, excuse me, Monday morning, Monday at noon was not early enough for that. I couldn't find any case that said less than three days was sufficient. Okay, 10 days. Would that have been fine? I believe so, your honor, yeah. And on December 10th, certainly the defense had the Certificate of Indian Blood. It had that for weeks and weeks. I believe so. And knew who had signed that and where it came from. So could have picked up the phone, and I understand you're going to say we don't have to do anything, but could have picked up the phone. And on the December 10th, the government files a trial brief. And amongst the things that are listed are Exhibit Number 10, which trial verification with Sinitna Nation. And there's not a witness listed to introduce that. Isn't that a self-notice that we're going to introduce this by 9.02? No, your honor. By pure logic. No, your honor. Courts have all required, every court to interpret this has required affirmative notice. They've required disclosure of the authentication certificate itself. So to say that the government hasn't yet figured out how they're going to get something into evidence, that's not affirmative notice. Of course it was disclosed. And the question is whether or not it was disclosed so that a party has a fair opportunity to challenge it. And it was not disclosed before trial. Draw this court's attention to Melendez-Diaz. There, the government said, I don't know what the problem is. Sure, let's say this is testimonial hearsay. The defense attorney could have called this person as a witness. And the Supreme Court said, no, that's not what's required. You, the government, introduce this evidence. You call your own witness. And so here, what the district court should have done is not to say you can't get this in altogether, but to say, no, you don't have this limited exception available to you anymore. You must do what everyone has done for decades and decades until this rule was created. And you must call a live witness subject to cross-examination so that the opponent has a fair opportunity to object to the authentication and to the certificate itself. And they had listed three witnesses to do so, albeit late. Correct. And the judge had already excused that lateness. Well, as we consider the last part, what I call prejudice, and maybe it is, maybe it's not, that the party has a fair opportunity to challenge them, is it a fair part of that consideration that the defense was slow to answer the prosecution's request? Would you please stipulate, or are you going to stipulate? And a day or two or three or four go by, and then there's a we're not sure, but probably not. And it's not until right on the moment that the defense says we're not stipulating. In other words, is it really that sympathetic of a case? Your Honor, I'm out of time. My error is gone. Oh, please. Okay, thank you. I don't think that's quite an accurate timeline, but when you say, I, the defendant, am going to trial, what you're saying is I'm contesting every element of the offenses I'm charged with. It's now the government's job to prove those elements. The government may want you to stipulate, it may expect you to stipulate, but it still independently must come up with a way to prove every element of the offenses against you beyond a reasonable doubt. Here, there's some argument between the attorneys about exactly when they said, absolutely, positively, we're not going to stipulate, but we know that a week before trial, they were like, probably not. It also takes time when your client is in custody for you to be able to say whether you're stipulating or not. It is not the attorney's decision whether to essentially stipulate to an entire element of the offense. He would need his client's permission to do so. So I don't believe that that is good faith, nor do I believe, or good cause, nor do I believe there's a good cause exception here to begin with. In the stipulation, or the no stipulation was stated on the 15th of December, which was within the exact time frame that the court set down in an order, correct? You met the deadline. To say no stipulation? I mean, the defense attorney was not late to say anything back about whether they were stipulating or not. And it provided plenty of time, right? It was significant. It was at least several days before the final witness list deadline, and certainly before the witness list that was actually submitted by the government. And the government had time after that to timely amend their witness list, rather than doing it after the deadline on the morning of trial. Correct, Your Honor. And time that if they had disclosed the certificate of authentication that day, it still would have been sufficiently before trial, that I think in that case, unless Mr. Wood could have said, we tried, we tried, we tried, we could not reach this person, that that would have been sufficient time. So the government at that point still had both paths available to it, and it did not pick the right one. Other questions? All right. Thank you. All right. Thank you. May it please the court, Stephen Bryden on behalf of the United States. I'd like to essentially just continue the argument from where it's bent. I'll focus on 902.11 as well. And I think what's most important to consider right from the get go, something that Judge Phillips has identified already, is that we're dealing with a standard. Could you pull the microphone down so he's speaking into the microphone? Thank you. I apologize, Judge. Is that we're talking about an abuse of discretion standard. So we're not talking about necessarily whether everything was done in the optimum way in this case. An error of law is abuse of discretion, correct? Correct. And so I think we need to consider what the judge knew, how clear some of these statements that Mr. Wood has made is that the law around when trial begins, timeliness for these particular notices are clear, that they're established in case law. Mr. Bryden, we understand abuse of discretion, how to apply it. And so let's just dig into the facts here. Before, late by the deadline, but before the trial started, the government listed three witnesses for authentication, correct? That's correct, Your Honor. Why did the government not call one of the witnesses listed, Leslie McCoy? Are you talking about at the time of trial? Or like call us? Of course. That's when we listed her as a trial witness. We listed her as a trial witness prior to the government receiving that certificate on the day of trial, which the government believed sufficed for admission. So thus, there was no longer a reason to have to call Ms. McCoy to testify. Now, what was it that said, told you you didn't have to call her? That the court had considered the certificate that the government offered prior to the jury and panelment. Why didn't you have her available just in case, you know, if you're trying to case, you got to plan for the worst possibility to have Ms. McCoy there in case you did not get the certificate of authentication in. So the only information in the record about Ms. McCoy's whereabouts was that the government represented, and it's on volume two, page 13 and 14, that they would have her available for trial. That was prior to the discussion of the certificate. So you'd represented, you'd have her available at trial and you didn't. I disagree with the idea that we didn't. Is there anything in the record that indicates she was present? There's only the government's representation that she would be available for trial. So there's no evidence that she was physically there so that she could at least be interviewed by the defense lawyer. No, Your Honor, but also if defense had made a request to rely on the government's, you know, subpoena or request for her to attend the trial, that's something the government may well have done, but that request wasn't wasn't made by the defense at that point in time. No, but whose burden is this to prove the authenticity of the underlying document? It is the government's burden. I agree with that 100%, which is why we had the certificate to offer. The government would not need to provide both the certificate and the testimony of Lesley McCoy in order to enter that certificate of Indian status into the record. And so once the court had agreed that the government could enter the certificate, there was no longer a need for the government to call her. But it would not. There were obviously other things that the defense could have requested. The government didn't deny any requests to talk to people. There was no request for a continuance to have some extra time. And the certificate itself was not discussed until the second day of trial when it was offered into evidence by Special Agent Megan Reese. And I believe she was the test witness that was called. Considering the underlying document, what is there in the certificate of authentication that indicates when the document was created? On the certificate of authenticity itself or on the certificate under the certificate? What evidence is there from any source that indicates when the underlying document of Indian blood quantum was created? So it is dated. I apologize, Your Honor. It's dated in the top right. It says Friday, July 23rd, 2020. And that's a date that's after the crime in question. That's correct, Your Honor. All right. And yet, so that's the date of its creation. That is the date that is on this document. I can't, there was no testimony that it was the date of creation. Isn't it important to know when the document was created? I'm sorry, Judge, I talked over you. Isn't it important to know when it was created? It could be important. However, it's not in the record. And so I can't... Well, I understand that. OK. Do we know when the enrollment date that's in handwriting was entered onto the certificate of Indian blood? We don't know that, Your Honor. All we know is that Leslie McCoy, who authenticates both documents, says that it's a record maintained in the traditional fashion of the Seneca and Cayuga tribe. I think one other thing that's important to note is that, just to make sure this is a clear point, Mr. Wood has argued that essentially that date is dispositive on whether or not he is tribal. That's actually not what 1151 requires or this case's, or this court's previous cases require. It requires, the only thing that is affirmative is that they have a degree of Indian blood. And then it's a more amorphous question of their contacts to the tribe, which could be proven up by all the rest of the information included here. Now, if you have an enrollment date that is prior to the offense, then there's essentially no defense to it. But that doesn't mean that if you don't have an enrollment date prior to the offense, they can't qualify as an Indian. You could prosecute somebody who's never enrolled if they have a degree of Indian blood and they have some... Why is the date of birth, the month and day, blocked out? My copy is blocked out. So this is how the exhibit went into the record, Your Honor, and we would generally block out information, specific people's personal information. As the same as we blocked out, for instance, their specific mailing address. All right. Is there anything in the record that indicates how it came about that the so that there can be some determination that when it showed up, it had attached to it the certificate of Indian blood and that attachment had been made by Ms. McCoy, Your Honor, about the 20th of December, 2021? There's not specific information in the record that would answer all of those questions. The government brought it in. And then on the face of the certificate of authenticity, where it has a blank to include the identity of the document that was attached, hopefully by Ms. McCoy and hopefully, Your Honor, about the 20th of December, it's blank, doesn't tell you what record it was. Your Honor, I think in cases where there were a significant amount of records where we need to make sure that everything this person is discussing is included under the auspices of the certificate of authenticity, it's important to list everything out in that section. However, here there's been a representation by the government that Leslie McCoy, the same person who signed both, and she represents herself, that she's seen this document and she's offering it to the court and the government made ultimately that representation that she has reviewed this document. That's what it's in relation to. Even though this document is never defined, do we know what this document is if it's not listed? It's correct that it's not listed. I'm not arguing that it's listed there. I think the context of how both of these documents came to the court make that answer clear, but it is not written. Let me ask you, on the Certificate of Indian Blood and the Friday, July 23rd, 2021 date, which I don't know if you've explained that or know the answer, when was this document produced to the defendant? It was produced in the first discovery, so when we provided our original case documents to the defendant for charging. When was it produced? Your Honor, the only statement in the record, I believe, is that it had been in their possession for months, but it's not spelled out clearly. This is not helping, because what I'm curious is whether or not it was produced before or after July 23rd, which is a pretty basic and important question. It is, Your Honor, and there's nothing clear in the record that I can give you that answers that question. Well, wait a minute. The crime was committed before July 23rd. That's correct, Your Honor. But it was, how much time between the time the crime was committed where he was indicted? Your Honor, I don't have- Do we have the date of the indictment? I don't have it in front of me, Your Honor. I apologize. Well, can we assume that the document, the certificate of Indian blood was not provided until after the indictment? I don't think we can assume that, Your Honor. That is not a generalized practice. Do you usually produce documents to a defendant before they're indicted? I apologize, Your Honor. I thought you were asking whether or not the tribe would have produced it to the government prior to indictment. If you're asking about whether we produced it to defense counsel, the answer to that would be no. That's what Judge Phillips was asking about, producing it to the defendant. I understand. So we would not have produced it to the defendant prior to indictment. And there would be some amount of time after the date of indictment before you would produce it to the defendant, correct? That's correct. The district court asked us to do that very quickly in our district, but I can't say a specific number of days. Just for everyone's information, the indictment's November 1st, 2021. Now, when it was produced to defendant, which is an important fact, we don't know currently. We do not know based on what's in the record on this issue. Do you see the significance of that? If it were produced on that day, then it would look like this was generated in response to producing the document. And if it wasn't, maybe this is the day that this was even done. Two largely different and important things. It could be, Your Honor, but I don't think that just because a document was generated or a copy of it is printed after an indictment necessarily assumes that it's produced for the purposes of a prosecution. These are normal tribal documents. There are lots of reasons why a person would need to get a certificate of their Indian blood for application for services and things like that. So these are documents that are only created for the purposes of government prosecution. No, but the requirement for admissibility is that it's made at or near the time of occurrence. We have no idea, right? Well, in this case, we have no idea when the document was created. It does say at or near the time of the occurrence of the matter set forth. So presumably, it would refer to Indian blood. That's my question. Well, and also, I mean, the Certificate of Authenticity itself, we have the keeper of the records, the enrollment officer for the tribe who's certifying this under oath or under the penalties of perjury. I think that's important when you're looking at the case law on these issues about how deeply courts need to go when they're considering these certificates. It's represented in Mr. Wood's brief that there's kind of a change in that courts are looking beyond those statements in the affidavit that comes from the McCormick on Evidence Treatise. But right before the sentence that's cited in Mr. Wood's brief, it says, most reported cases have referred to the certification as being only a verbatim recitation of the required terms of the business records exception. So once the court is presented with a certificate of authenticity that states what is necessary under 803, if it's signed and if it's stated, the court can accept those representations as true. So when you're concerned. But the purpose of the Certificate of Authenticity is to establish that the underlying document is what it purports to be. And if you can't say when it was made, you can't say whether it was made at or near the time of occurrence. Could have been July 23rd, 2021. Yes, Your Honor. Could have been some other date, right? Some other date earlier, but we don't know. The only information is the date on the document. And the important thing is the enrollment date, which is handwritten in. Doesn't all that indicate that it is difficult to tell from the Certificate of Authenticity that the Certificate of Indian Blood is what it purports to be? Your Honor, I see that. And is admissible under the exception to the hearsay rule. I see that I'm out of time, Your Honors. Is it appropriate for me to answer the question? Thank you. In this case, that's the information that we're getting from the Certificate of Authenticity. Somebody is signing that. And the purpose of this document, again, is to make these representations to the court from somebody who knows. And then the question becomes, is it an abuse of discretion for the court to consider what he sees in the Certificate of Authenticity, along with the information coming from both the government and the defense about the Certificate of Authenticity, to have admitted it? So the district court says, well, I look at these two certificates. They're signed by the same person. It's admitted. It will be received. Is that all we need under this rule? Your Honor, I think if there was no opportunity for the attorneys to speak and be heard so that we can understand that the district judge is hearing all of these arguments and they can provide us. You tell the defendant that they need to ask questions and everything. Isn't it the obligation of the counsel for the government to ask the court what it means? Your Honor, I don't think that the court was particularly ambiguous in what it meant. I think it heard the arguments of both parties. All right, then what more do you need? Then it was established that this document was admitted because both the cover document and the underlying Certificate of Indian Blood were signed by the same person. That's the basis of it being admitted by the district court. Because the district court heard the arguments about why he believed that the certificate was not authentic, and the judge said, I am looking at this document where this woman is certifying that these things that you have a problem with are not the case, that they are correct. And so I'm going to credit her as a person who has clear knowledge of the original document, because she signed off on it, and the certificate of itself that she signed off on. Do you reckon it indicates the judge is reciting all this, saying all this? He is making his, I am paraphrasing a little bit. I'm not speaking exactly from the record. We have a transcript of the record, correct? We do have a transcript of the record. Does it indicate this long explanation, or does it basically just say the Certificate of Authenticity and the Certificate of Indian Blood are signed by the same person? It will be received. Your Honor, you have to consider what's happening for the whole hearing, where he is, when the defense is making. No, I'm asking what the judge said. I understand the argument would make, but what did the judge say? I'm sorry, I was being unclear what I was saying. He's engaging in the moment, the judges, with these questions. So it's not just what he says at the end of the hearing, where he says, ultimately, they're signed by the same people. OK, I understand that. Just tell me if at the hearing he said, in substance of fact and not much more, the two documents are signed by the same person and it will be received. Just give me a yes or no. That's all I'm asking for. Your Honor, I think that's what he said, but I don't think it's fair to not include his prior statements on the record in figuring out what he thought. I understand your position. What was your case authority for saying that tribal membership doesn't matter, only blood? That's discussed in Prentiss. And you can see discussions of it in the Ortner case, which I know is unreported, but it's cited. It says that? If I read that case, it will say that? Yeah, the dynamics of proving Indian status is relatively clear from the court's prior case law, which is, it's a two-pronged system. One is, do they have a degree of Indian blood? And then the second prong is, have they been recognized by the tribe in some way? And that can be proven two different ways. First, from if they are actually registered with the tribe  that's going to be very difficult evidence to refute. But you don't have to have that. You can have some other evidence of tribal connection. But we don't have any. My point was that the document itself does not need to require that blood quantum in order to prove that they are Indian. It doesn't if you have other proof, is what I'm hearing you say. But then I'm also hearing you say, but we don't have any other proof, which makes me wonder, why are you raising this? It's part of an argument that they would make off of this proof alone. You could argue that the fact that he has the blood quantum and that he has connections with the tribe sufficient to become enrolled is enough to prove they're an Indian person. OK. Well, thank you, counsel. Thank you, your honors. You were out of time, but we've gone over here. So let's be fair. We'll give you four minutes. And any additional need for questioning? Thank you. Thank you, your honors. In terms of the timeline of what happened, the offense date here is charged that it's March 2021. Mr. Wood's first in state custody. The state has no element that it would need to worry about whether he's a tribal member or not. Then this document is dated July 2021. And then Mr. Wood is federally indicted in November 2021. And it's introduced against him in December 2021. Looking again at the enrollment date that's written, when is it written? It has questions, I think, that are obviously unanswered here. But the import, it's not like you would just strike the enrollment date off that certificate of Indian blood quantum. If there is a problem, and this is not a business record anymore, even if the underlying typewritten part was once a business record, the solution isn't to wipe that out. The whole document would be inadmissible. And again, as this court was saying, you can prove Indian status without official tribal membership. But you have to prove recognition by a tribe or the federal government. And there's no other evidence in this case of recognition by a tribe or the federal government. The government has repeatedly said in both its brief and an oral argument that there's an abuse of discretion standard here. That's clearly true. But what the government has never said is how, what Rule 902.11 means, whether it complied with Rule 902.11, and how, and if it did not comply with Rule 902.11, why this court should read exceptions into that rule, what exceptions it should read, and which exception they would capture this case. And that's because there is simply no case law from any circuit that would support what happened in this case. There's no interpretation of Rule 902.11. Let me take you on a little detour around the smoking pileup of Rule 902. And that is to maybe another smoking pileup of United States versus Walker. So versus what? Walker, 2023 case cited in the briefs. And there, our court said that the testimony of a witness that you, sir, don't have Indian blood, you're not a member of the tribe, was good enough without a record. That 602, personal knowledge, was sufficient. Here we have MM testifying that, in fact, the defendant is an Indian. No objection, no anything else. Why is that testimony alone not enough, putting all of the 902 stuff aside? I think there's two questions there. One is, what was her testimony? And two, what's the harmless error analysis? Well, she testified he's an Indian. She said that he is Seneca, Cayuga, and Quapaw. But the question here is not one of identity. It's of citizenship. It doesn't matter what he thinks he is. It doesn't matter what she thinks he is. What matters is if he has blood, that he has ancestry that was in America before Columbus. And what matters is whether he's recognized as an Indian by a tribe or the federal government. She doesn't testify about that. In US v. Ortner, not published, this court said that a childhood friend of Mr. Ortner's, who did testify he has Indian blood, was no evidence that he actually had Indian blood. Let me read you the testimony. And maybe it's not all that I was making it up. Sure. You can decide. MM, do you know if Mr. Wood is Native American? Yes. Do you know what tribe? And then she gives that tribe. And on they go, on past that. Now, I understand your point about pre-Columbus and so forth. But why isn't Wood still instructive on that point? Because it's the opposite. I'll grant you, it's not this person's an Indian. Instead, it's this person isn't an Indian. But both of those questions involve blood. And Your Honor, here the question was whether he's Native American. It wasn't a technical question to someone with technical knowledge of what federal Indian law is and what it requires. Neither was Walker. And even if we say this is some evidence and it would have been sufficient to sustain the conviction, that's not the question on harmlessness. The question on harmless error here is whether the jury would have been substantially influenced by this very official looking tribal document that gave a specific blood quantum, a specific enrollment date, and with a specific tribe signed by that tribe. So the question here is much more like the Ninth Circuit case that I cite, where there they thought that the tribal record could simply be self-authenticating if it was sealed. It wasn't. And in that case, you had testimony from an FBI agent saying that the defendant lived on the Hualapai Reservation and a testimony from the alleged victim in that case saying that he was a member of the Hualapai Reservation. And the Ninth Circuit said, but when you've got this powerful other evidence, we can't say that's harmless. When even with this other evidence on the record, here we have even less than that, less specific, less official, and this court, the government has not sustained its burden to prove this harmless error. MM had lived with them for years. She wasn't a stranger making a guess. Do we factor that? And again, no, Your Honor, because this, you know, I cite some census statistics, because it's kind of hard to give evidence putting this into point. But when the census said, hey, you can identify now as Native American without having any official documentation, the Native American population doubled. Because there, when it's the census, it's about identity. But when it comes to federal Indian law and the jurisdictional element, it's not about identity. It is something different. It is a technical definition of Indian that his girlfriend wasn't asked about, and maybe likely wouldn't have known. But in any event, her testimony was not so specific and so powerful that you can say that this very official-looking document that did go to all of the different requirements of Indian status under federal law, that its admission was harmless. Nor did Walker, either, though. That's my problem. If there were no Walker, I would be persuaded by your argument. But Walker says what Walker says. And again, Your Honor, this is not a sufficiency of the evidence case. We're not asking whether this could have persuaded a jury. But for the erroneously-admitted evidence, was there sufficient evidence in the record for a conviction to be sustained? That's not the question for this court. The question is about not that hypothetical, but the trial that did happen and the evidence that was introduced, and whether that evidence that was erroneously introduced had substantial impact on the jury's verdict. Questions, anyone? All right. Thank you for your argument, counsel. Appreciate it. And the cases submitted, counsel, are excused.